## NASHVILLE, CHATTANOOGA AND SAINT LOUIS RAILWAY COMPANY *v.* MILLER.

1. The fact that a person other than the wrong-doer, as a mere gratuity, pays to one injured as the result of his negligence a sum of money equal to the amount he would have earned had he been able to work during the period of disability, will not mitigate the damages due by the wrong-doer to the injured party for lost time.
2. The rule just stated is applicable though the person making the payment is the employer of the injured party.
3. *Quære,* whether the wrong-doer can plead the payment to diminish the amount of his liability, when, under the terms of the contract of employment, the injured party had a legal right to demand it.
4. When a petition in an action for personal injuries contains allegations which in a general way show that the plaintiff has lost time, and evidence which fixes the time lost and the value of such time with certainty is admitted without objection, a charge that plaintiff is entitled to recover for lost time such an amount as the evidence authorizes will not be held to be erroneous, though there is in the petition no distinct claim for damages on account of lost time.
5. None of the evidence objected to was inadmissible for any of the reasons assigned.
6. An allegation in a petition, that the plaintiff "has suffered and will continue to suffer great pain," is sufficient to authorize the admission of evidence that mental pain has been suffered; and when such evidence is admitted, there is no error in charging the jury that in assessing the damages they may take into consideration the mental pain suffered by the plaintiff.
7. The charge as a whole was free from error. The verdict was warranted by the evidence, and was not excessive. No sufficient reason has been shown for reversing the judgment.

Argued May 24, — Decided June 10, 1904.

Action for damages. Before Judge Fite. Dade superior court. November 16, 1903.

*Payne & Tye* and *R. J. & J. McCamy,* for plaintiff in error.
*Rosser & Brandon* and *B. J. Conyers,* contra.

COBB, J. Miller was a railway mail clerk, and received injuries as the result of a collision between the train upon which he was working and another train. He brought his action for dam-

ages against the railway company, and at the trial it was conceded that he was entitled to recover, the sole issue in the case being as to the amount of damages which should be awarded him. The jury returned a verdict for $4,000. The defendant made a motion for a new trial upon numerous grounds, and complains that the court erred in overruling the same.

1–3. Error is assigned upon the following charge: "It is immaterial whether the Government paid the plaintiff anything or not; that would not affect the rights of the plaintiff in this case to recover against the railroad company." Error is further assigned upon the refusal of the judge to give in charge a written request, which was as follows: "Plaintiff admits in his testimony that he received from the Government his regular salary during the time he did not work on account of his injury. This being so, I charge you that he can not recover anything on this account for time lost as claimed in his declaration." King, an assistant division railway mail superintendent, testified as follows: Plaintiff "returned to work about June 10, 1903, about the time his year expired. If he had not gone back to work, he would have been granted further time, but his pay would have stopped. The Government pays them for one year when they are disabled from work; this is done on physician's certificate for no period longer than sixty days consecutively, and not to exceed one year in total." The amount thus received by the plaintiff was $1,400. While the statute or regulation of the post-office department under which this payment was made does not appear in the record, nor is it cited in the briefs of counsel, the payment was evidently made under the provisions of section 1424 of the Postal Laws and Regulations, which reads as follows: "Whenever a railway postal clerk shall be disabled while in the actual discharge of his duties by a railroad or other accident beyond his power to control, he shall send to the division superintendent a certificate of his attending physician or surgeon, sworn to before an officer authorized to administer oaths, who has an official seal, setting forth the nature, extent, and cause of his disability, and the probable duration of the same; and such further evidence as to the character of the disability as may be necessary shall be furnished. The division superintendent will forward the certificate, with his recommendation, to the General Superintendent of the Railway Mail

Service, who will submit the matter to the Postmaster-General, who may, in his judgment, the facts justifying such action, grant such disabled clerk leave of absence with pay for periods of not exceeding sixty days each, and not exceeding one year in all."

In considering whether the assignments of error under consideration are well taken it is necessary to determine whether the payment referred to in the testimony was of such a character as to preclude the plaintiff from claiming compensation for lost time against the railway company. When one engaged in any calling or vocation, from which he derives a pecuniary benefit, is compelled to give up, for a time, the performance of his duties, as the result of an injury inflicted upon him by a wrong-doer, he is entitled, as a general rule, to demand compensation for the time thus lost at the hands of the wrong-doer who inflicted the injury. The general rule is, that where a wrong-doer causes time to be lost, he will not be heard to say that the person injured has suffered no pecuniary loss, because he has received, as a direct result of being injured, contributions which in amount aggregate more than what would have been earned during the time; nor will his liability be diminished to the extent of contributions which were less than what would have been earned. If from motives of affection, philanthropy, or as the result of a contract, the plaintiff has received from one other than his employer any sums the reception of which is directly attributable to the fact that he has been injured, the person causing the injury will not be allowed to urge the payment of such sums in mitigation of the damages claimed against him. Thus it has been held that the damages will not be reduced by any amount of insurance received in consequence of the wrong-doer's act. See *Western & Atlantic Railroad* v. *Meigs*, 74 *Ga.* 857 (5); Cunningham v. R. Co., 102 Ind. 478. Nor will the fact that medical attention and nursing have been rendered gratuitously preclude the injured party from recovering the value of such services (Brosnan v. Sweetser (Ind.), 26 N. E. 555; Penn. Co. v. Marion, 104 Ind. 239; Varnham v. Council Bluffs, 3 N. W. 792); though it has been held that no recovery can be had for the value of services of this character rendered by members of the family, unless an agreement to pay for them be shown. Goodhart v. R. Co. (Penn.), 35 Atl. 191. Ought the rule to be different where the employer, from motives of humanity, sympathy, busi-

ness interest, and the like, pays to the injured employee, as a mere gratuity, for a given time, an amount which he would have been authorized to demand if he had performed the services of his employment, but which he had no right to demand unless the services were performed? In Texas it has been held that an amount paid by an employer, whether paid as the result of a direct undertaking, or as a mere gratuity, can not be pleaded in mitigation of damages. Missouri Ry. Co. *v.* Jarrard, 65 Tex. 560. In an Indiana case the same rule was laid down, though it does not appear distinctly whether the payment was made as the result of a contract or as a gratuity. Ohio R. Co. *v.* Dickerson, 59 Ind. 317. It has been held by the courts of last resort of New York and Alabama and by intermediate courts in Missouri, that where an employer pays to his employee, during the period of his disability, an amount which would be equal to his wages earned if he had been at work, the employee can not seek compensation for lost time against a wrong-doer who causes the time to be lost. See Drinkwater *v.* Dinsmore, 80 N. Y. 390, 36 Am. Rep. 624; Montgomery Ry. Co. *v.* Mallette, 92 Ala. 210 (6); Lee *v.* Western Union Tel. Co., 51 Mo. App. 375 (6), 385; Ephland *v.* Ry. Co., 57 Id. 147 (4), 160. A ruling to the same effect seems to have been made by Lore, C. J., on circuit, in Delaware. Chielinsky *v.* Hoopes, 40 Atl. 1127 (6). None of these cases seem to lay any stress upon the question as to whether the payment was a gratuity, or was required by the contract of employment. The cases referred to above are cited in the different text-books on damages. These text-writers do not agree as to what is the correct rule, but Mr. Watson distinctly takes the position that the sounder view is that which would preclude the wrong-doer from taking advantage of the employer's having, from reasons satisfactory to himself, paid to his injured employee an amount which would have been equal to his wages if he had performed the services for the period during which he was disabled. See Watson's Dam. Pers. Inj. § 479; 1 Suth. Dam. (3d ed.) § 158; 2 Rorer on Rds. 859; 1 Joyce on Dam. § 231; Voorhies on Dam. 61. See also the article written by Mr. Watson, the author of the work above cited, in 8 Am. & Eng. Enc. L. (2d ed.) 649. We think the view taken by Mr. Watson, and which seems also to be concurred in by Mr. Sutherland and Mr. Rorer, is sounder than that which appears to be approved

by the other text-writers.    The wrong-doer may show, in defense
to a claim for lost time, that no time has been lost; and this of
course is right and just, because if no time has been lost, no com-
pensation is due from anybody on account of lost time.    But if
time has been lost as the result of a tort, sound sense, common
justice, and it may be public policy would demand that the tort-
feasor be prohibited from making a defense founded upon the prop-
osition that he has been guilty of a wrong, — it may be a grievous
and outrageous wrong, — but that some third person, not only not
in sympathy with the wrong-doer, but despising him and his act, has,
from some worthy motive, paid to the injured person an amount
which, if it had come from the wrong-doer, would have equaled
the damages which would have been assessed against him.    There
is nothing in the record to show that the Government, in its con-
tract of employment with railway postal clerks, stipulates for the
payment of salary during periods of disability ; and, so far as the
record discloses, when such an employee is disabled from work, he
can not, as a matter of right, demand anything from the Govern-
ment by way of compensation during the period of disability.
There is nothing in the testimony of the witness King to indicate
that payments are made in such cases otherwise than as a matter
of grace.    If we look at the postal law or regulation above quoted,
it is perfectly clear that the payment is a mere gratuity on the
part of the Government.    We are, therefore, not confronted in
the present case with the necessity for deciding the question as to
what would be the rule in the event that the injured employee,
under his contract of employment, had a right to demand of his
employer the amount which he would have earned as wages dur-
ing the period he was disabled.    On this question we now make
no authoritative ruling; but we do rule that where an employer
pays to an injured employee, as a matter of grace, the amount
which he would have earned as wages if he had not been disabled,
a wrong-doer who brings about the disability has no concern with
this transaction between the employer and the employee, and the
amount so paid is not to be regarded as in any sense compensation
for lost time.    Hence there was no error in the charge complained
of, or in refusing the instruction requested.

4. Complaint is also made that the court's charge in reference
to lost time was erroneous, for the reason that there was no allega-

tion in the petition claiming compensation for lost time.    The petition did not in terms ask damages for lost time.    It did allege that the plaintiff "was confined to his bed for many weeks;" that he was "earning $1,400 at the time of his injury;" that "his capacity to labor has been largely and permanently impaired." He claimed damages in the sum of $500 for doctor's bills, medicine and nurse hire; laying the aggregate damages which he claimed to have sustained in the sum of $10,000.    Under these general allegations the plaintiff offered evidence to show that he had lost time, and the evidence set forth with certainty the time lost, to wit, one year less two days.    In *Savannah Ry. Co.* v. *Holland*, 82 *Ga.* 258 (4), it was held that it is not necessary that punitive damages should be claimed eo nomine in a petition; that it is enough if the facts alleged and the proof be such as to warrant the assessment.    In the present case the general allegations of the petition were sufficient to show that time had been lost, and any defect in reference to specific details should have been taken advantage of by special demurrer.    The evidence in reference to lost time having been admitted without objection, there was no error in the charge that plaintiff was entitled to recover for lost time if the evidence authorized it.    In *Western & Atlantic R. Co.* v. *Patillo*, 99 *Ga.* 97, there was neither allegation nor evidence in reference to lost time; and it was therefore manifest error to instruct the jury on the subject.    In the present case there was ample evidence admitted without objection, and the allegations of the petition, though general, were sufficient to cover the subject in the absence of a special demurrer.

5. In four grounds of the motion for a new trial complaint is made of rulings of the court on the admission of evidence.    In two of them it is alleged that it was error to admit certain evidence in reference to the character of the injuries sustained by the plaintiff, on the ground that there was no allegation to authorize the admission of such evidence.    In another ground the evidence objected to was by a witness, that the plaintiff "complained" of a great deal of pain; the objection being that it was hearsay; and in still another ground evidence of the plaintiff's wife was objected to, to the effect that the plaintiff returned home from his first trip after the injury, and immediately went to bed; and that she had to rub him quite often.    The allegations of the petition were suffi-

ciently broad to authorize the admission of the evidence first above referred to, and the other evidence was not inadmissible for any reason assigned in the motion for a new trial.

6. The judge charged the jury that in determining the damages to be assessed they could take into consideration the mental suffering that the plaintiff had undergone as a result of the injury. Objection is made to this charge, on the ground that there were no allegations in the petition to authorize any charge on the subject of mental pain. The petition alleges that the plaintiff was confined to his bed for many months on account of the injury, and that "he has suffered and will continue to suffer great pain." This allegation in reference to pain was sufficiently broad to authorize the introduction of evidence in regard to mental pain; and evidence to this effect having been introduced, there was no error in charging on the subject.

7. The motion for a new trial contains numerous exceptions to the charge, but when the extracts excepted to are considered in the light of the entire charge, we do not think they were erroneous for any reason assigned, nor was any error committed which required the granting of a new trial. The charge, taken as a whole, seems to have fairly and fully submitted the issues to the jury. If the judge did not go into detail as fully as defendant's counsel desired, this should have been made the subject of special requests, or at least the attention of the judge should have been called thereto. We find no error of law which, in our opinion, would authorize a reversal of the judgment. The remaining question grows out of that ground of the motion which complains that the verdict is excessive. Under the view we have taken of the case the evidence authorized a finding of $1,400 for lost time. The evidence also authorized a finding for the physical suffering which the plaintiff underwent, and this would itself be sufficient to justify the remainder of the verdict, even if nothing was allowed for mental suffering, and the jury had determined the issue in reference to permanent disability in favor of the company.

*Judgment affirmed. All the Justices concur.*